UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMIR GHUGE,

                     Plaintiff,

        - against -

VIRTUSA CORPORATION,

                     Defendant.

**ORDER**

19 Civ. 8091 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this diversity action, Plaintiff Samir Ghuge asserts claims against his former employer, Defendant Virtusa Corporation, for breach of contract and breach of the covenant of good faith and fair dealing.  (Cmplt. (Dkt. No. 1) ¶¶ 19-22, 24-26)  Virtusa has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 25)  For the reasons stated below, Virtusa's motion will be granted.

**BACKGROUND**

Plaintiff began working at Polaris Consulting and Services, an IT consulting firm, in 2006.  (Cmplt. (Dkt. No. 1) ¶¶ 1, 7)  By 2013, Plaintiff had become a senior vice president, and he helped facilitate Polaris's sale to Virtusa in November 2015.  (Id. ¶¶ 8-9)

In recognition of his role in facilitating the sale, in 2016 Virtusa's global head of human resources informed Plaintiff – who was employed at Virtusa's Manhattan office – that he would be awarded $600,000 in restricted stock units, which would vest over a four-year period.  (Id. ¶¶ 6, 11-13)  Plaintiff received this grant of restricted stock units pursuant to Vitrusa's 2015 Stock Option and Incentive Plan ("Stock Option Plan").  (Id. ¶ 20; see Smith Aff. (Dkt. No. 26-1), Ex. 2)

On March 23, 2017, Ghuge received a letter from Virtusa informing him of his compensation "effective from March 01, 2017" (the "Compensation Letter").  (Cmplt. (Dkt. No. 1) ¶ 14; Smith Aff. (Dkt. No. 26-1), Ex. 1)  The Compensation Letter provides that Plaintiff will receive an annual base salary of $215,000 and "Variable Pay" – a "Performance Incentive" – of $85,000.  (Cmplt. (Dkt. No. 1) ¶ 15; Smith Aff. (Dkt. No. 26-1), Ex. 1)  The Compensation Letter provides that "the payment of Variable Pay is based at the sole discretion of the management."  (Cmplt. (Dkt. No. 1) ¶ 15; Smith Aff. (Dkt. No. 26-1), Ex. 1)

Although the Compensation Letter does not specify a term of employment (see Smith Aff. (Dkt. No. 26-1), Ex. 1), senior Virtusa executives "reassured [Plaintiff] on several occasions . . . that he would remain employed during the vesting period."  ((Cmplt. (Dkt. No. 1) ¶ 13)  Virtusa terminated Plaintiff's employment in June 2017, however, "prior to the vesting of the vast majority of his restricted stock."  (Id. ¶ 17)  Although Virtusa informed Plaintiff that "his role had been eliminated," Plaintiff "was, in fact, eventually replaced by another employee."  (Id. ¶¶ 17-18)  Plaintiff further alleges that Virtus "retain[ed] lower-performing employees," and that "there is every reason to believe that [he] was terminated to prevent him from receiving the benefits of his [restricted stock]."  (Id. ¶ 18)

The Complaint pleads that, by terminating Plaintiff's employment "without good cause in June of 2017," Virtusa breached the Compensation Letter, which "provided that he would be employed during Fiscal Year 2017."  (Id. ¶¶ 24, 26)  Plaintiff further alleges that, in terminating his employment, Virtusa acted in "bad faith . . . to prevent his options from vesting," and thereby "breached the covenant of good faith and fair dealing implied in the Stock Option Plan."  (Id. ¶ 22)

**DISCUSSION**

## I.      LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Allegations that "are no more than conclusions[ ] are not entitled to the assumption of truth," however.  Iqbal, 556 U.S. at 679.  A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). "While legal conclusions can provide the [complaint's] framework[,] they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  Id. (quoting Mangiafico v.

Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  "On a motion to dismiss for breach of contract,

courts look . . . at the contract itself, which by definition is integral to the complaint."  Axiom

Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533

(S.D.N.Y. 2017) (citing Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d

Cir. 2011)).

## II.      ANALYSIS

### A.      Breach of Contract

Plaintiff contends that the Compensation Letter constitutes an employment

agreement; that that agreement does "not provide management [with] the discretion to terminate

[him] without cause"; and that by doing so, Virtusa breached the agreement.  (Cmplt. (Dkt. No.

1) ¶¶ 14-15, 24-26)  Virtusa counters that Plaintiff was an at-will employee, and therefore his

termination does not constitute a breach of contract.[1]  (Def. Br. (Dkt. No. 26) at 6-7)[2]

"New York has a well-established at-will employment doctrine:  '[a]bsent an

agreement establishing a fixed duration, an employment relationship is presumed to be a hiring

at will, terminable at any time by either party.'"[3]  Albert v. Loksen, 239 F.3d 256, 264 (2d Cir.

---

[1]  Virtusa also contends that the Compensation Letter is not an employment agreement.  (Def. Br.
(Dkt. No. 26) at 6 n.1)  The Compensation Letter constitutes an offer to employ Plaintiff at an
annual salary of $215,000, with an incentive bonus of $85,000.  Plaintiff accepted that offer
when he continued employment at the company post-March 23, 2017.  As discussed below,
however, the Compensation Letter does not contain any promise to continue Plaintiff's
employment for any particular period of time.

[2]  The page numbers referenced in this Order correspond to the page numbers designated by this
District's Electronic Case Files ("ECF") system.

[3]  Because both sides cite to New York law in addressing Plaintiff's breach of contract claim (see
Def. Br. (Dkt. No. 26) at 7); Pltf. Br. (Dkt. No. 29) at 10-11 (citing only New York law)), they
have implicitly agreed that this Court should apply New York law in resolving Plaintiff's breach
of contract claim.  See Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 514 n.4 (2d Cir. 2001)
("The parties' briefs assume that New York substantive law governs the issues of contract
interpretation and statute of limitations presented here, and such implied consent is, of course,
sufficient to establish the applicable choice of law."); Corbett v. Firstline Sec., Inc., 687 F. Supp.

2001) (quoting <u>Sabetay v. Sterling Drug, Inc.</u>, 69 N.Y.2d 329, 333 (1987)); <u>see also</u> <u>Bernhardt v.</u>

<u>Tradition N. Am.</u>, 676 F. Supp. 2d 301, 304-05 (S.D.N.Y. 2009) ("Where a term of employment

is for an indefinite period of time, it is presumed to be an employment at will that is freely

terminable by either party at any time for any reason or even for no reason."); <u>Weiler v. Nat'l</u>

<u>Multiple Sclerosis Soc.</u>, No. 79 Civ. 5856, 1980 WL 104, at *4 (S.D.N.Y. Feb. 27, 1980) ("[A]

contract for employment with no specific term is terminable at will and does not give rise to a

cause of action." (citing <u>Parker v. Borock</u>, 5 N.Y.2d 156, 159 (1959) ("[P]laintiff's contract of

employment was not a hiring for a specific term.  Hence, standing alone, it was terminable at

will, and would not give rise to a cause of action.")))); <u>Edwards v. Citibank, N.A.</u>, 100 Misc. 2d

59, 60 (N.Y. Sup. Ct. 1979) ("[I]t is hornbook law that any contract for an indefinite period of

time is terminable at the will of either party at any time. . . .  Such a contract is terminable for

any reason or for no reason." (internal citations and quotation marks omitted)).

        Plaintiff argues, however, that the presumption of at-will employment under New

York law is overcome here because of "the course of conduct of the parties, 'including their

writings and . . . negotiations.'"  (Pltf. Br. (Dkt. No. 29) at 10-11 (quoting <u>Weiner v. McGraw-</u>

<u>Hill</u>, 57 N.Y.2d 458, 466 (1982))  As an initial matter, Plaintiff's reliance on <u>Weiner</u> is

misplaced.  In that case, Weiner claimed that he had been lured to accept a new job by the

employer's promise of job security.  <u>Weiner</u>, 57 N.Y.2d at 465.  The job application Weiner

completed cited to a handbook that provided for termination only for cause, and only after

attempts had been made to resolve any performance issues.  <u>Id.</u> at 460, 465-66.  Weiner claimed

that – in accepting the job – he had relied on the employer's promise of job security, and the

policies and procedures set forth in handbook.  <u>Id.</u> at 465.  Given these circumstances, the New

---

2d 124, 128 (E.D.N.Y. 2009) (applying New York law where "both parties cite exclusively to
New York contract law in their arguments").

York Court of Appeals concluded that the presumption of at-will employment had been overcome.  Id. at 465-66.  "Subsequent decisions by [the New York Court of Appeals] have confirmed[, however,] that it was the confluence of these 'cumulative factors,' and the presence of an 'express written policy' that allowed Weiner to proceed to trial on his breach of contract claim."  Dooley v. Metro. Jewish Health Sys., No. 02-CV-4640(JG), 2003 WL 22171876, at *5 (E.D.N.Y. July 30, 2003) (internal citations omitted).  The facts and circumstances here are not comparable to the "cumulative factors" cited in Weiner.

Plaintiff claims that the presumption of at-will employment is overcome by "the language of the compensation letter, the absence of any . . . at[-]will disclaimer, and the antecedent negotiations, specifically [a senior Virtusa executive's] assurances that [Plaintiff] would be employed through the vesting period."  (Pltf. Br. (Dkt. No. 29) at 11)

As to the Compensation Letter, Plaintiff cites to the fact that it provides for an annual salary and states that "the company 'looks forward to your continued commitment.'" (Cmplt. (Dkt. No. 1) ¶ 15)  New York courts have found terms such as "yearly employment for a specified annual salary" too indefinite to rebut the presumption of at-will employment.  Rooney v. Tyson, 91 N.Y.2d 685, 691 (1998); Dalton v. United Bank of Switzerland, 134 A.D.2d 174, 176 (1st Dept. 1987) (defendant's promise of an annual compensation rate did not obligate defendant to employ plaintiff for that year or for any other period).  And Virtusa's statement that it "looks forward to [Plaintiff's] continued commitment" is of no assistance in rebutting the presumption.  See Harrison v. Indosuez, 6 F. Supp. 2d 224, 232 (S.D.N.Y. 1998) (at-will relationship was not altered by comment that "[w]e look forward to a long and mutually rewarding association").

Finally, Plaintiff alleges that senior executives at Virtusa assured him "that he would remain employed during the vesting period."  (Cmplt. (Dkt. No. 1) ¶ 13).  "Oral assurances alone, however, are insufficient to overcome the employment-at-will presumption and create a triable issue regarding any contractual obligations on the part of the employer."  Dooley, 2003 WL 22171876, at *6 (dismissing plaintiff's breach of contract claim in the absence of "an express written provision in any . . . documents exhibiting an intent on [the employer's] part to curtail its right to terminate [plaintiff's employment] at will").

Because Plaintiff was an at-will employee, his termination provides no basis for a breach of contract claim.  See Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 138 (2d Cir. 2007) ("[Plaintiff] has not alleged sufficient facts to suggest that she was not an at-will employee, and therefore she has not adequately alleged that the [defendant] breached an employment contract by terminating her.").  Accordingly, Plaintiff's breach of contract claim will be dismissed.

### B.      Breach of the Implied Covenant

Plaintiff claims that "Defendant . . . breached the covenant of good faith and fair dealing implied in the Stock Option Plan when it terminated [his] employment in bad faith in order to prevent his options from vesting and thereby preventing him from receiving the benefits of the Stock Option Plan."  (Cmplt. (Dkt. No. 1) ¶ 22)  Virtusa counters that Plaintiff's good faith and fair dealing claim must be dismissed because Plaintiff's termination was "contemplated by the express contractual terms of the Stock [Option] Plan."  (Def. Br. (Dkt. No. 26) at 13)

The Stock Option Plan provides that it "shall be governed by, and construed in accordance with, the laws of the State of Delaware."  (Smith Aff. (Dkt. No. 26-1), Ex. 2 at 24)  "Because Delaware law applies to the [Stock Option Plan], it also applies to the action for breach

of the [Plan's] implied covenant of good faith and fair dealing." Parisi v. Wipro Ltd., No. 16

CIV. 1824 (PAE), 2016 WL 6905987, at *8 (S.D.N.Y. Nov. 23, 2016) (citing Butvin v.

Doubleclick, Inc., No. 99 Civ. 4727 (JFK), 2001 WL 228121, at *7 (S.D.N.Y. Mar. 7, 2001)

(applying contract's Delaware choice of law provision to good faith and fair dealing claim)).

In Delaware, the implied covenant of good faith and fair dealing "is 'best

understood as a way of implying terms in the agreement, whether employed to analyze

unanticipated developments or to fill gaps in the contract's provisions.'" Campbell v. Plant

Health Intermediate, Inc., No. 7:19-CV-3017 (PMH), 2020 WL 3127809, at *4 (S.D.N.Y. June

12, 2020) (citing Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 441 (Del. 2005)).

"However, the implied covenant of good faith and fair dealing 'cannot be used to circumvent the

parties' bargain' and does not 'create a free-floating duty . . . unattached to the underlying legal

document.'" Id. (quoting Dunlap, 434 A.2d at 441).  To state a claim for breach of the implied

covenant under Delaware law, a plaintiff "cannot rely on 'general allegations of bad faith

conduct,' but rather 'must allege a specific implied contractual obligation [unrelated to the

express contract provisions] and allege how the violation of that obligation denied the plaintiff

the fruits of the contract.'" Id. (quoting Kuroda v. SPJS Holdings, LLC, 971 A.2d 872, 888 (Del.

Ch. 2009))  "One generally cannot base a claim for breach of the implied covenant on conduct

authorized by the agreement." Nemec v. Shrader, 991 A.2d 1120, 1125-26 (Del. 2010)

(alteration omitted).

Here, Plaintiff does not identify the "specific implied contractual obligation" that

Virtusa allegedly breached.  Instead, Plaintiff merely contends that Virtusa "terminated him

specifically to avoid paying him the compensation he had earned for putting together the Virtusa-

Polaris deal." (Pltf. Br. (Dkt. No. 29) at 8; see also Cmplt. (Dkt. No. 1) ¶ 22)  The Stock Option

Plan expressly contemplates the possibility that an employee may be terminated before rights have fully vested, however, providing that "a grantee's right in all Restricted Stock Units that have not fully vested shall automatically terminate upon the grantee's termination of employment . . . with the Company . . . for any reason." (Smith Aff. (Dkt. No. 26-1), Ex. 2 at 17-18)  The Stock Option Plan also makes clear that "[t]he adoption of this Plan and the grant of Awards [under the Plan] do not confer upon any employee any right to continued employment with the Company."  (Id. at 23-24)  Where, as here, "the parties contemplated the possibility of termination of employment without cause and negotiated for [the expiration of Restricted Stock Units that have not fully vested as of that time]," a "plaintiff cannot . . . complain that the occurrence of an event expressly provided for constitutes a breach of an implied covenant of good faith and fair dealing."  Manchester v. Narragansett Capital, Inc., No. CIV. A. 10822, 1989 WL 125190, at *9 (Del. Ch. Oct. 19, 1989).

            The Delaware authority Plaintiff cites (Pltf. Br. (Dkt. No. 29) at 8) is not to the contrary.  In Landry v. Mabey Bridge & Shore, Inc., No. CIV.A. N11C-09146PLA, 2011 WL 5592589, at *3 (Del. Super. Ct. Nov. 7, 2011), plaintiff's employment contract set forth circumstances under which he could be terminated for cause and thereby lose his employment benefits.  Landry, 2011 WL 5592589, at *1.  Landry alleged that his employer had "falsely claimed that he was terminated for cause to avoid paying him severance benefits."  Id. at *3.  While Landry's good faith and fair dealing claim was rooted in a specific, implied obligation not to falsely designate a termination as "for cause," Plaintiff's claim is not premised on any specific implied obligation in the Stock Option Plan.

            Because (1) Plaintiff has not identified any specific implied obligation in the Stock Option Plan that Virtusa breached; (2) the Stock Option Plan acknowledges that an

employee may be terminated before Restricted Stock Units are fully vested; and (3) the Stock

Option Plan clearly sets forth the consequences of a termination of employment before

Restricted Stock Units are fully vested, the Complaint does not state a claim for breach of the

implied covenant of good faith and fair dealing.

<u>**CONCLUSION**</u>

For the reasons stated above, Defendant's motion to dismiss is granted.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 25) and to close this case.

Dated:  New York, New York
        November 3, 2020                     SO ORDERED.

_____
Paul G. Gardephe
United States District Judge